UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WAYNE PIPKIN | * | CIVIL ACTION |
| VERSUS | * | NO. 04-2532 |
| M-I L.L.C. d/b/a SWACO & d/b/a M-I DRILLING FLUIDS, L.L.C. | * | SECTION "B"(1) |

## ORDER AND REASONS

Before the Court are Defendants' Motion for Summary Judgment ( Rec. Doc. No. 27) and Plaintiffs' Cross-Motion for Partial Summary Judgment (Rec. Doc. No. 33). For the following reasons, **IT IS ORDERED** the motions are hereby **DENIED**.

## BACKGROUND

Defendant, M-I, L.L.C. d/b/a ("MI"), is a Delaware oilfield contractor which provides drilling fluids and services to oil companies drilling offshore. Plaintiff, Wayne Pipkin, was employed with MI beginning in 1975 as a mud engineer, and worked for MI's predecessor, Magobar, Inc. from 1965-1975. His job was to monitor the weight of the mud and the down hole pressures. Pipkin was promoted to well programmer. In that capacity, he designed a program to estimate the down hole pressure when drilling; estimated the cost of drilling; and monitored the drilling process from an office. Occasionally, well programers are required to go to rig sites. In the 1990's, Pipkin was promoted to project engineer to Murphy Oil. In August 2001, Pipkin was re-assigned to the Harvey, Louisiana office under the supervision of Ron Nutt. Pipkin was then

assigned in October 2001 to Trinidad as a project engineer. This position ended in May 2002 due to the inability to find oil. Pipkin was then assigned temporarily to the Harvey, Louisiana office, writing mud programs. In September 2002, Pipkin was given the position of liquid mud supervisor in Venice, Louisiana (essentially a demotion). Due to a reduction in work force, MI then offered Pipkin a job as mud engineer on a drilling rig in Venice, Louisiana. Robert Mercer, Operations Manager, was Pipkin's supervisor at the time and Ron Nutt supervised Mercer. On September 2, 2003, Pipkin's position was changed, requiring him to work offshore on a Chevron rig.

According to Plaintiff, he suffered a mental breakdown on September 7, 2003. (Rec. Doc. No. 35 at "Ex. G at 62," Pipkin Depo.). From September 7, 2003 to December 14, 2003, Pipkin applied for and received short term disability benefits. Pipkin was diagnosed with having a major depressive episode (Rec. Doc. No. 35 at "Ex. H," Dr. Khoury). The medical records related to Plaintiff's mental and physical problems demonstrate the following: that soon after Pipkin's mental breakdown, Plaintiff suffered major depressive disorder and was able to engage in only limited stress situations and engage in only limited interpersonal relations. He was diagnosed with severe limitation of functional capacity (incapable of minimum sedentary activity-- 75-100% restriction) and provided with medication, education, counseling, and marital education as treatment. (Rec. Doc. No. 35 at "Ex. H," Dr. Khoury). Dr. Khoury estimated Plaintiff could return to work in 2-3 months and provided counseling two times a week from September to December 2003. (Rec. Doc. No. 35 at "Ex. H," Dr. Khoury).[1]

In December, Pipkin's medical records show he suffered from severe osteoarthritis,

---

[1]No further mental health treatment is indicated in records.

degenerative disc disease, chronic tendinitis, shoulders, patella arthritis (right knee), joint arthritis (right hand), and ankle arthritis.(Rec. Doc. No. 35 at "Ex. I," Dr. Marra). Dr. Marra restricted Pipkin from climbing ladders, lifting, long-term standing, lifting above shoulder level and climbing stairs. He noted "no change in progress" bud found the patient was not disabled and could return to work on December 9, 2003 on light duty, noting it was not safe for Pipkin to work on oil rigs. (Rec. Doc. No. 35 at "Ex. I," Dr. Marra). Then in June, 2004, two doctors found the following limitations stand for 1-4 hours; sit 1-3 hours; drive 1-3 hours; patient is able to– 1-33% bend, push, pull, balance, grasp, reach; 0% squat, climb, twist body, kneel, crawl. The doctors found Pipkin could work 8 hour days with these restrictions. (Rec. Doc. No. 35 at "Ex. W & Ex. Y"). The doctors stated Pipkin was capable to perform clerical/administrative activity (60-70% restriction) and he could never return to his current occupation, full or part time (ref. oil engineer).

On November 18, 2003, Pipkin contacted Bryan Dudman, VP of the Western Hemisphere for assistance finding a position to accommodate his limitations. (Rec. Doc. No. 35 at "Ex. L"). Dudman responded that he would look for positions that may permit Pipkin to work from home. (Rec. Doc. No. 35 at "Ex. L"). On Dec. 5, 2003, Pipkin sent a follow-up email to Dudman to inquire about the position which would allow him to work full time from home. (Rec. Doc. No. 35 at "Ex. L"). On December 9, 2003, Pipkin contacted Mercer for assistance in finding such a position, who stated the company needed a full medical release from Pipkin to offer him a position. (Rec. Doc. No. 35 at "Ex. M"). Pipkin emailed Dudman to inform him of the Mercer conversation (Rec. Doc. No. 35 at "Ex. N"). In January 2004, Pipkin was hired for three months in Mexico to write a manual for the company. (Rec. Doc. No. 35 at "Ex. P").

Plaintiff contends and Mercer's deposition testimony confirms, Plaintiff acquired this position due to a prior working relationship, not due to Defendant. Upon completion of this temporary assignment, Pipkin returned to the Harvey, Louisiana region. Plaintiff applied for a total of three positions upon his return from Mexico. (Rec. Doc. No. 27 at "Ex. A at 63-72, 125"). However, two of the positions required some off shore work. Plaintiff was not offered the position of <u>Project Engineer in Houston</u>, the one position he applied for which did not require any off shore work. (Rec. Doc. No. 35 at "Ex. S"). Instead, the position was filled by Paul Davis, with 21 years of experience, compared to Pipkin's 35 years (Rec. Doc. No. 35 at "Ex. T"). Defendant states they hired Davis instead of Pipkin because Davis would bring in additional clients.

MI's position has consistently been that positions were not available that suit Pipkin's limitations, namely, positions that did not require at least some rig responsibilities. (Rec. Doc. No. 35 at "Ex. R & M"). Dudman, in his deposition, stated there were probably jobs available with MI that did not require offshore work, but he was not sure if the Plaintiff was applying for them. (Rec. Doc. No. 35 at "Ex. O at 52"). In May 2004, Pipkin filed for short-term disability benefits for the second time. After the expiration of the thirteen-week period, he applied for long-term disability benefits with the company, and he is currently receiving long term disability benefits.

Plaintiff filed a charge of disability discrimination with the Equal Employment Opportunity Commission (EEOC). After receiving a right to sue letter, Plaintiff filed suit under the Americans with Disabilities Act of 1990 ("<u>the Act</u>" or "<u>ADA</u>") and the Louisiana Civil Rights for Handicapped Persons Act, La. R.S. 46:2251 (collectively "<u>ADA claims</u>"). The right to sue letter stated no positions were available which met Plaintiff's restriction not to work on a rig.

**Law and Analysis**

**A. Standard of Review**

Summary judgment is appropriate if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©); Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial. Webb v. Cardiothoracic Surgery Associates of North Texas, 139 F.3d 532, 536 (5th Cir. 1998). The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. Id. The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to defeat a properly supported motion for summary judgment. Anderson, 477 U.S. at 252. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. Travelers Ins. Co. v. Liljeberg Enter., Inc., 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Americans for Disabilities Act**

The Americans with Disabilities Act of 1990, 104 Stat. 328, 42 U.S.C. § 12101 et seq., ("the Act" or "the ADA") prohibits employment discrimination against persons with a disability.

Specifically, "[no] covered entity[2] shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Louisiana law provides for the same analysis and criteria to qualify for relief. Delaney v. City of Alexandria, 01-1076 (La. 11/28/01) 800 So.2d 806.

To establish a prima facie discrimination claim under the ADA, Plaintiff must show that he was "disabled," was qualified for the job, and was the subject of an adverse employment action because of his disability. Dupre v. Charter, 242 F.3d 610, 613 (5th Cir. 2001). The Act defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under 42 U.S.C. § 12102(2), a person may have a "disability" in one of three ways:

 (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

 (B) a record of such an impairment; or

 ©) being regarded as having such an impairment.

**C. Discussion**

To establish a prima facie case, Plaintiff must show (1) that he was "disabled," (2) was qualified for the job of Project Engineer in Houston or some other jobs he was allegedly not offered, and (3) was the subject of an adverse employment action because of his disability. Dupre v. Charter, 242 F.3d 610, 613 (5th Cir. 2001). Plaintiff bases his claim of "disability" under the ADA on the

---

[2] Under the ADA, " [t]he term 'covered entity' means an employer, employment agency, labor organization, or joint labor -management committee." 42 U.S.C.§ 12112(2).

6

ground that his physical restrictions, pain and arthritis severely impair his ability to return to his former position (Complaint); and "walk, stand, crawl, bend, climb, carry, squat, twist and work." (Rec. Doc. No. 35 at "Ex. K"). In the alternative, Plaintiff also argues he is disabled under the ADA due to his record of a substantially limiting impairment, 42 U.S.C. § 12102(2)(B), and he was "regarded as" having such an impairment by MI, 42 U.S.C. § 12102(2)©). The Court must separately consider each claim.

**1. Substantial Limitation**

To qualify as disabled under § 12102(2)(A), a plaintiff must prove that (1) he or she has a physical or mental impairment[3] that (2) substantially limits (3) a major life activity. Bragdon v. Abbott, 524 U.S. 624 (1998). Not only must Plaintiff demonstrate the existence of an impairment, but he must demonstrate that the impairment limits a major life activity. The HEW Rehabilitation Act regulations provide a list of examples of "major life activities," that include "walking, seeing, hearing," "performing manual tasks" and "working." 45 C.F.R. 84.3(j)(2)(ii). Defendant does not contest that *some* impairment does exist and that the impairment limits Plaintiff's ability to work.

Plaintiff must further demonstrate, however, that the limitation on the major life activities are "substantial." According to the EEOC regulations,[4] "substantially limited" means "unable to

---

[3]"Physical impairment" is defined as "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; muscoloskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genitourinary; hemic and lymphatic; skin; and endocrine." 45 CFR § 84.3(j)(2)(i)(A) (2001). Toyota v. Williams, 534 U.S. 184, 194-95 (2002) (citing regulations issued by the Department of Health, Education, and Welfare ("HEW") for the Rehabilitation Act). A "mental impairment" is defined as "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 45 CFR § 84.3(j)(2)(i)(B) (2001).

[4]Unlike "physical or mental impairment" or "major life activities," the HEW regulations and ADA statutes fail to define the term "substantial." The EEOC has created its own definition for purposes of the ADA. See Toyota, 534 U.S. at 195 (using EEOC definition for term "substantial").

perform a major life activity that the average person in the general population can perform," 29 C.F.R. § 1630.2(j)(1)(I), or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that major life activity," 29 C.F.R. § 1630.2(j)(1)(ii). The regulations outline the following factors for courts to consider in determining whether a plaintiff is "substantially limited" in a major life activity: "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(i)-(iii). To determine whether an individual is substantially limited in a major life activity, the Court must conduct an individualized inquiry. Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999). The Court must then consider how well an average person in the general population can perform the activity. Lynch v. Lee, 2004 U.S. Dist. LEXIS 16906, 2004 WL 1900463, at *3 (E.D.La. Aug. 20, 2004).

The Plaintiff contends, and Defendant does not dispute, Pipkin's conditions, including degenerative disc disease, chronic arthritis, and tendinitis. The medical testimony from multiple doctors which place restrictions upon Pipkin's ability to walk, stand, crawl, bend, climb, carry, squat, and twist. (Rec. Doc. No. 35, at "Ex. W & Y"). Both Dr. Marre and Dr. DiGidio found Pipkin can only stand for 1-4 hours, sit for 1-3 hours and drive 1-3 hours. The doctors also limited Pipkin's ability to bend, push, pull, balance, grasp, and reach to 1-33% and Pipkin's ability to squat, climb, twist body, kneel, crawl to 0%. Dr. Marre also placed a 10 pound lifting restriction on Pipkin. (Rec. Doc. No. 35 at "Ex. W & Y").

However, not all impairments are severe enough to be considered disabilities under the ADA. The United States Supreme Court recently concluded "[t]he word 'substantial' thus precludes

impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities;" Toyota, 534 U.S. at 197, and "'[m]ajor life activities' thus refers to those activities that are of central importance to daily life. See id. at 634 (holding "household chores, bathing, and brushing one's teeth are among the types of manual tasks of central importance to people's daily lives, and should have been part of the assessment of whether respondent was substantially limited in performing manual tasks"). Plaintiff has not argued the above uncontested restrictions prevent or limit his ability to brush his teeth, drive to work, brush his hair, or perform household chores. To determine whether Pipkin is disabled because of his inability to walk, stand, crawl, bend, climb, carry, squat, and twist, as Plaintiff pled, is a fact intensive issue and should be placed before the trier of fact. See Dupre, 242 F.3d at 614 (finding Plaintiff's inability to sit or stand for up to an hour is not "substantially limiting" the major life activity of sitting and standing); Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1025 (5th Cir. 1999) (noting "moderate restrictions" on walking do not amount to substantial limitation).

The Plaintiff further contends his impairments limit the major life activity of working. In the Fifth Circuit, courts use the EEOC regulations for guidance. See Dupre, 242 F.3d at 614. Accordingly, Pipkin must demonstrate that his restrictions and injuries preclude him from a class of jobs or a broad range of jobs.[5] Dupre v. Charter Hospital, 242 F.3d 610, 614 (5th Cir. 2001); Santiago-Clemente v. Executive Airlines, Inc., 213 F.3d 25, 32 (1st Cir. 2000). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. 1630.2(j)(3)(I). "To be substantially limited in the major life activity of work, then, one must be precluded from more than one type of job, a specialized job, or a particular

---

[5] Specifically, 29 C.F.R. 1630.2(j)(3)(I) states: "with respect to the major life activity of working– The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.

9

job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." Sutton v. United Air Lines, 527 U.S. 471, 493 (1999). In determining whether someone is restricted from performing a "class of jobs," the regulations contemplate considering the "number and types of jobs utilizing similar training, knowledge, skills or abilities" to the person's former job, in a reasonably accessible geographical area, which are also foreclosed to the person because of his impairment. 29 C.F.R. § 1630.2(j)(3)(ii)(B). A similar inquiry, but for jobs not utilizing similar training and skills, is contemplated for determining whether a person is restricted from a "broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(ii)©) . The Supreme Court has summarized these considerations by saying: "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." Sutton v. United Airlines, Inc., 527 U.S. 471, 119 S. Ct. 2139, 2151, 144 L. Ed. 2d 450 (1999). "This circuit has little precedent giving examples of what constitutes a "class of jobs." We have held that firefighting, including being a paramedic required to serve as a backup firefighter, is too narrow a field to constitute a class of jobs." Tullos v. City of Nassau Bay, 137 Fed. Appx. 638 (5th Cir. 2005); Bridges v. City of Bossier, 92 F.3d 329, 335-36 (5th Cir. 1996)**.**

This Court is required to determine whether Pipkin's evidence demonstrates that his restrictions significantly limit his ability to perform the requisite jobs "as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I). In doing so, courts consider (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact. 29 C.F.R. § 1630.2(j)(3)(ii)(A)-

(C)). See Dutcher, 53 F.3d at 726.

In Dupre, a plaintiff healthcare worker alleged degenerative disc disease and degenerative facet joint disease disqualified her from all manual labor, and therefore she was precluded from a broad range of jobs. 242 F.3d at 614. The Fifth Circuit affirmed a district court's grant of summary judgment in favor of the employer, reasoning that the plaintiff was not disqualified from all jobs requiring manual labor, only those involving very strenuous physical activity. Id. Plaintiff could still perform jobs requiring light labor. Id. See also Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F. Supp. 2d 144 (D.P.R. 2003) (employee's physical impairment, osteoarthritis, did not "substantially limit" claimed major life activity of working so as to render him disabled under the ADA; impairment did not preclude him from class of jobs, or broad range of jobs, rather than just his particular job).

Alternatively, courts have found that an employee's physical impairments substantially limit the major life activity of working. See, e.g., Webner v. Titan Distribution, Inc., 267 F.3d 828, 834-35 (8th Cir. 2001) (truck driver with twisting and lifting restrictions); Ulatowski v. Sterling Corp., 2005 U.S. Dist. LEXIS 375, *23 (N.D.Ill. 2005) (assembly line workers with carpal tunnel syndrom); Mondzelewski v. Pathmark Stores, 162 F.3d 778 (3rd Cir. 1998) (plaintiff's back condition coupled with his personal characteristics substantially limited his ability to work). In Devine v. City of Dallas, plaintiff's medical evidence suggested he could not bend, twist, lift, or carry more than 10 pounds, severe back pain and documented muscle spasms. 2000 U.S. Dist. LEXIS 390 (N.D.Tex. 2000). The court denied employer's motion for summary judgment, finding questions of fact existed regarding the long-term impact, and thus severity, of plaintiff's back injury and whether the injury substantially limited major life activities, including working. Id. at *29-30.

Here, two doctors have advised against Pipkin's return to his former job, as oil rig engineer,

11

which requires climbing ladders on oil rigs and work above shoulder level. In November, 2003, Dr. Marra noted in Pipkin's medical record that he should not return to working on oil rigs. (Rec. Doc. No. 35 at "Ex. I"). If, in fact, Plaintiff is restricted to any and all work on oil rigs, it seems such limitation would constitute a class of jobs or a broad range of jobs. Cf. Comment to 29 C.F.R. 1630.2(j) (stating that the terms "number and types of jobs" are not intended to impose an onerous evidentiary burden but are meant only to require evidence of the approximate number of jobs from which the individual is precluded from working); Mondzelewski v. Pathmark Stores, 162 F.3d 778 (3rd Cir. 1998) (plaintiff's back condition coupled with his personal characteristics substantially limited his ability to work). However, the Pipkin's 2004 medical records, which list the various restrictions to his work and movements, do not state he is unable to perform any work on rigs. Instead, the documents state Pipkin can return to part-time work (other than his prior job which required movement of his arms above the shoulder level) if the restrictions are followed. (Rec. Doc. No. 35 at "Ex. I"). It is not clear from the medical records or other documents submitted whether the restriction against working on rigs includes any and all work on a rig  for example, if a job required Plaintiff to walk onto a rig but did not require climbing ladders or other physical activity. The Court finds this presents a material issue of fact for the jury or trier of fact to determine.

**2. Regarded as Disabled**

An employee may be disabled under the ADA when his or her employer regards him or her as having a substantially limiting impairment. 42 U.S.C. § 12102©).  To be "regarded as" disabled, Pipkin must show that (1) Pipkin's impairment does not substantially limit major life activities, but (2) MI treated him as though his impairment substantially limits his major life activities. 29 C.F.R. § 1630.2(l)(1). Moreover, "Under the 'regarded as' prong, the disability stats of the plaintiff turns not on the plaintiff's physical condition, but rather on how the plaintiff was perceived and treated

12

by those individuals alleged to have taken discriminatory action. Id.[6]

The question is whether MI believed that Pipkin's impairment substantially limited him in a major life activity. The Fifth Circuit has held that an employer does not necessarily regard an employee as substantially limited when it discharges the employee because he cannot perform his job. Hinojosa v. Jostens, 128 Fed. Appx. 364, 367-68 (5th Cir. 2005) (citing Ray v. Glidden Co., 85 F.3d 227, 229-30 (5th Cir. 1996); Richards v. Seariver Maritime Fin. Holdings, Inc., 59 F. Supp. 2d 616 (when an employer takes steps to accommodate an employee's restrictions, it is not thereby conceding that the employee is disabled under the ADA or that it regards the employee as disabled). Regarding "the major life activity" of working, substantially limits is defined as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(I).

The summary judgment record clearly contains sufficient evidence to establish that Dudman and Mercer regarded Pipkin as having an impairment. (Rec. Doc. No. 35 at "Ex. M") The more difficult question is whether Pipkin "produced summary judgment evidence sufficient for a reasonable trier of fact to find that [M-I] regarded [Pipkin's impairment] as substantially limiting a major life activity." Deas, 152 F.3d at 476.

The Fifth Circuit has held that when an employer terminates an employee for their inability to perform the duties of a specific job, the employer does not necessarily regard the employee as disabled. Dupre, 242 F.3d at 616; Deas 152 F.3d at 481. In Dupre, the court stated that "even if we assume that [the defendant] thought that [the plaintiff's] condition would cause her to be absent,

---

[6] The Court notes that the discriminatory action is not hiring Pipkin for the positions not requiring work on the rigs. It's not clear from the record who is responsible for this action and the Court uses Dudman and Mercer in its analysis because they were the individuals Pipkin contacted for accommodations.

there is no evidence that [the defendant] thought that [the employee] was unable to perform other jobs." 242 F.3d at 616. Similarly, in <u>Deas</u>, the court held that the defendant's "belief that [the employee] was incapable of fulfilling the essential functions of an 'addiction technician' in a hospital substance abuse treatment unit does not establish that she regarded her as being substantially limited in her ability to work in general." 152 F.3d at 481, <u>see also</u> <u>Chandler v. City of Dallas</u> 2 F.3d 1385, 1393 (5th Cir. 1993) ("An employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general.").

      The Fifth Circuit has held that the unavailability of any other jobs with an employer besides those that the employee is unable to perform due to an impairment is an indication that the employee was not terminated because they were regarded as disabled. <u>Hinojosa</u>, 128 Fed. Appx. at 368; <u>Pryor v. Trane Co.</u>, 138 F.3d 1024, 1028 (5th Cir.1998); <u>Ray v. Glidden</u>, 85 F.3d 227, 229-230 (5th Cir.1996). In <u>Hinojosa</u>, the court stated that "the fact that Jostens terminated Hinojosa because he could not perform the duties of any job available at Jostens does not establish that Jostens regarded Hinojosa as substantially limited in a major life activity." 128 Fed. Appx. at 368. Similarly, the court did not find that the employer regarded the plaintiff as disabled in <u>Pryor</u> because "there was no evidence that Trane regarded Pryor's neck injury as preventing her from performing an entire class of jobs; it merely showed that at the time there were no jobs available which fit Pryor's restrictions." 138 F.3d at 1028. The court follows a similar analysis in <u>Ray v. Glidden</u> where the court did not find that the employer regarded the employee as disabled because "Ray neither suggests he was denied another job because of a belief that his condition would prevent him from performing adequately nor counters Glidden's evidence that no other jobs were available when he employment was terminated." 85 F.3d at 229-230.

      In Pipkin's situation, the record shows that following his hospitalization, in order to provide

14

him with a job within the doctor's restrictions, Rudman placed him in a temporary position in Mexico. (Rec. Doc. No. 27 at "Ex."H"). Upon completion of the temporary task in Mexico, the record shows that Pipkin approached his supervisor requesting a job placement within his restrictions. (Rec. Doc. No. 27 at "Ex. A"). In response, his supervisor informed him that the only work available was on offshore oil rigs, which Pipkin was restricted from doing. (Rec. Doc. No. 27 at "Ex. A"). Additionally, Pipkin presents evidence of a job he was qualified for within M-I, but was not given in favor of another employee with less experience (Rec. Doc. No. 35 at "Ex. S & T") allegedly due to the other person's ability to bring in additional clients.

M-I, however, contends that had Pipkin checked M-I's employment website, which he had full access to, he would have seen that there were other positions he was qualified for, and that fit within his medical restrictions. (Rec. Doc. No. 36 at "Ex. A"). The Defendant argues that they did not deny these jobs to Pipkin, rather, Pipkin failed to seek them out. (Rec. Doc. No. 36 at "Ex. A"). Yet, there is conflicting testimony Pipkin's supervisors informed that the only jobs available were those that Pipkin could not perform due to his medical restrictions.

It is contested whether there existed other jobs that Pipkin was able to perform. This presents a material issue of fact which precludes the Court from granting either motion for summary judgment.

### 3. Record of Disability

The "record of such impairment" prong applies where an individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. Burch v. Coca-Cola Co., 119 F.3d 305, 321 (5th Cir. 1997) (quoting 29 C.F.R. § 1630.2(k)). "[Plaintiff] bears the burden of showing that he has a record of an impairment."

Hinojosa v. Jostens, Inc., 128 Fed. Appx. 364, 367 (5th Cir. 2005) (citing Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc., 242 F.3d 610, 615). The Fifth Circuit "has specifically rejected that injury, surgery, hospitalization, and inability to work can establish a record of a disability as a matter of law." 128 Fed. Appx. At 367, see also Pryor v. Trane Co. 138 F.3d 1024, 1028 (5th Cir.1998). In Ray v. Glidden, the court held that a doctor's letter describing the plaintiff's inability to engage in certain activities, such as lifting heavy containers, "is insufficient to establish a record of an impairment that substantially limits a major life activity, because it indicates only that [the plaintiff] was unable to perform continuous heavy lifting." 85 F.3d 227, 229 (5th Cir. 1996). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R § 1630(j)(3)(I); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir.1995). The court in Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc. held that information that plaintiff provided on an "Employee Health Screening Form" in addition to other information regarding plaintiff's alleged disability gained by defendant through interactions with the plaintiff was insufficient to constitute a record of impairment. 242 F.3d 610, 615 (5th Cir.2001). "Not only must [the plaintiff] demonstrate that she has a record of an injury or impairment, but the evidence must show that her impairment limited a major life activity. Id., see also Sherrod v. American Airlines, 132 F.3d 1112, 1120-1121 (5th Cir.1998), Burch v. Coca-Cola Co., 119 F.3d 305, 321 (5th Cir. 1997.) Additionally, the plaintiff in Pryor v. Trane Co. was given work restrictions based upon her medical history, and the court held "the mere fact that [the plaintiff] had work restrictions [does] not require the jury to find that she had a disability that substantially limited a major life activity." 138 F.3d 1024, 1028 (5th Cir.1998).

The Plaintiff does not point to any evidence that demonstrates a record of impairment that

16

limited a major life activity. The record of Plaintiff's impairment was limited to hospitalization for a mental breakdown, a doctor's statement restricting certain specific job related activities, and receipt of disability benefits from the Defendant for his injuries. None of this evidence is sufficient to satisfy a finding of a "record of impairment" under the Fifth Circuit's standards. A record of hospitalization is not a record of disability, nor is a doctor's note restricting specific activity. Pryor v. Trane Co. 138 F.3d 1024, 1028 (5th Cir.1998) , 29 C.F.R § 1630(j)(3)(I); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir.1995), Ray v. Glidden 85 F.3d 227, 229 (5th Cir.1996). The receipt of disability benefits from his employer also does not constitute a record of impairment because the disability benefits were not received for an injury or impairment that substantially limited a major life activity. The evidence in the record is not sufficient to support a finding of a "record of impairment." However, a reasonable juror could find otherwise. Therefore, the Court is unable to grant summary judgment on this basis of "disability."

## B. FAILURE TO ACCOMMODATE

Even if an employee is "disabled" under the ADA, the employee must show that the employer failed to reasonably accommodate his disability. "Reasonable accommodations" means "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). It is the plaintiffs "initial request for accommodation which triggers the employer's obligation to participate in the interactive process of determining" a reasonable accommodation. Taylor v. Principal Financial Group, 93 F.3d 155, 165 (5th Cir. 1996); 29 C.F.R. § 1630.9. An employer's duty to provide reasonable accommodation may include but does not require "job restructuring; part-time or

modified work schedules; reassignment to a vacant position," or "transfer to an occupied position." 29 C.F.R. § 1630(o)(2)(emphasis added); see also Daugherty v. City of El Paso, 56 F.3d 695, 698 (5th Cir. 1995) (quoting Chiari, 920 F.2d at 317). Furthermore, an employer is not required under the ADA to always provide the employee with the best possible accommodations or in the specific manner the employee requested. 29 C.F.R. § 1630.9. The ADA says that "discrimination" includes and employer's "to making reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A). See also 29 C.F.R. § 1630.9.

The issue here is whether a reasonable jury could find that MI was required to hire Pipkin as the Project Engineer in Houston or whether MI was required to reassign Pipkin to an office job or another position based on his restrictions.[7] Moreover, the employee "need only show that an 'accommodation' seems reasonable on its face, i.e. ordinarily or in the run of cases." US Airways, Inc. v. Barnett, 535 U.S. 391, 401 (2002). Once the employee makes this showing, the employer "then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." Id. at 402. The Court notes the employer here has not argued that such a request would create an "undue hardship." See (Answer & Mtn. for Summary Judgment). On

---

[7]Further "the law does not require an employer to transfer from the disabled employee any of the essential functions of his job." Barber v. Nabors Drilling U.S.A., 130 F.3d 702, 709 (5th Cir. 1992). If it is necessary to transfer any of the essential functions of the Project Engineers to others on the rig or onshore, then Pipkin is not otherwise qualified. We cannot say that he can perform the essential functions of a Project Engineer with reasonable accommodation, if the only successful accommodation is for Pipkin not to perform those essential functions. Id. at 709-710 (finding plaintiff could not be accommodated for a tool pusher position on an oil rig). This is not a reassignment case.

the other hand, a reasonable jury could find the request to reassign Pipkin to a position that did not require work offshore may have been unreasonable. Defendants presented evidence that a vast majority of employment in the company required at least some work on a rig. Further, Pipkin did not express an interest to do a position that required minimal work on a rig in contravention with his doctors' suggestions, nor did he apply for any positions besides Project Engineer. The law does not require MI to hire Pipkin for the sole job he requested, especially when, as here, the employer has provided a reasonable explanation for the failure to hire. As a result, the Court must find an issue of material fact exists regarding whether Pipkin's request of reassignment was indeed a reasonable accommodation and whether Pipkin had some duty to apply for positions which fit his medical restrictions.

## C. ADVERSE EMPLOYMENT ACTION

"To constitute a cognizable 'adverse employment action' an action must be an ultimate employment decision." Skinner v. Brown, 951 F. Supp. 1307, 1315 n.9 (1996), aff'd, 134 F.3d 368 (5th Cir. 1997) (citing Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir. 1995)). "'Ultimate employment decisions' include acts 'such as hiring, granting leave, discharging, promoting, and compensating.'" Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (quoting Dollis, 77 F.3d 777 at 781-82 (noting that Title VII was not designed to "address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions")). The plaintiff must show that the defendant employer took the adverse employment action solely because of the employee's disability. Rizzo, 84 F.3d 758 at 764 (emphasis added); see Washington v. HCA Health Serv. of Texas, Inc., 152 F.3d 464, 467 (5th Cir. 1998). See also Burlington Northern & Santa Fe Railway Co. v. White, ____ U.S. _____ (June 22, 2006) (distinguishing the test for "adverse employment action" in Title

VII employment discrimination claims based on anti-retaliation provisions under §2000e–3(a) and those under §2000e–2(a) ) .

As a defense to the ADA claims brought against it, MI maintains that it had a legitimate nondiscriminatory reason for its employment decision. Pipkin contends he suffered an adverse employment action when the Defendant failed to inform or offer Pipkin employment which met his restrictions. The Court finds these are fact intensive questions for the jury or trier of fact to determine.

For the reasons stated above, the motions for summary judgment filed on behalf of Defendants and Plaintiff are hereby **DENIED**.

New Orleans, Louisiana, this 25th day of July, 2006.

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE